IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| **CAROL S. MCCLANAHAN,** )<br>    **Plaintiff** )<br>)<br>**v.** )<br>)<br>**BRIAN K. STAINKER, et al.,** )<br>    **Defendant** ) | **REPORT AND<br>RECOMMENDATION**<br><br>**Civil Action No. 1:08cv00038** |

The plaintiff, Carol S. McClanahan, brought this case against defendants Brian K. Stainker, Benjamin L. Campbell, Officer Hay and Deputy Sheriff B. McPherson. McClanahan seeks recovery under 42 U.S.C. § 1983 for excessive force and civil conspiracy and failure to intercede in violation of clearly established constitutional rights. She also seeks recovery for wrongful arrest and assault and battery in violation of Virginia state law. McClanahan's claims stem from two separate incidents, one on September 19, 2006, and the other on August 22, 2007, both resulting in her arrest.

This matter is currently before the court on the Motion To Drop, (Docket Item No. 11), and the Motion To Dismiss, (Docket Item No. 12) ("the Motions"), filed on behalf of the defendants Brian K. Stainker, Benjamin L. Campbell and Officer Hay. Specifically, these defendants request that the court drop defendant McPherson as misjoined and sever all of McClanahan's claims against him. The Motion To Dismiss seeks to have McClanahan's 42 U.S.C. § 1983 civil conspiracy claim dismissed for failure to state a claim upon which relief may be granted, and it seeks to have Counts Five, Six and Seven, the excessive force claim, the wrongful arrest claim and the

-1-

assault battery claim, all against defendant McPherson, dismissed, as they do not allege conduct on the part of either defendant Stainker, Campbell or Hay. McClanahan has responded to the Motion to Drop and the Motion to Dismiss, and defendant McPherson has responded to the Motion to Drop. (Docket Item Nos. 36, 37, 38). McPherson does not object to the Motion to Drop. McClanahan does not oppose severance of her claims against McPherson. This court has jurisdiction in this case pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. The Motions are before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

*I. Facts*

McClanahan filed her Complaint with the court on September 19, 2008, asserting violations of 42 U.S.C. § 1983 for excessive force, civil conspiracy and failure to intercede, as well as state assault and battery claims and a wrongful arrest claim. For the purpose of this court's consideration of the Motion to Dismiss, the facts, as alleged in the Complaint, will be accepted as true.

*A. September 19, 2006, Arrest*

McClanahan states in her Complaint that on September 19, 2006, she met a friend at the Baja Café, ("the Café"), a restaurant located in Abingdon, Virginia, where she consumed some food and two beers. (Complaint at 3.) She alleges that she left the Café on foot, and after walking approximately three blocks, was approached

by one of the defendants[1] on foot, who did not identify himself as a police officer, and who shone a spot light in her face, demanding loudly that she identify herself and her address. (Complaint at 3.) Due to her surprise, McClanahan did not respond. (Complaint at 3.) She alleges that the other two defendants, who got out of their respective police cars, one in front of her and one behind her, also demanded loudly that she identify herself and provide her address. (Complaint at 3.) McClanahan alleges that she still was so surprised that she did not respond. (Complaint at 3.) One of the defendants yelled that she was "under arrest," and when McClanahan asked why, he stated "drunk in public." (Complaint at 3.) McClanahan requested a breathalyzer at that time. (Complaint at 3.) Two of the defendants grabbed her, and she asked them not to touch her. (Complaint at 3.) One of the defendants had her by one arm, and another defendant had the other arm, pulling in opposite directions. (Complaint at 3.) She alleges that at least one of these defendants tripped, spinning her off of her feet and landing with her on the ground. (Complaint at 3.) When this defendant pushed and held McClanahan's face in the dirt, she felt a tremendous pain in her lower back. (Complaint at 3.) The other defendant grabbed and held both of McClanahan's hands together on her left side. (Complaint at 3.) She contends that at least two of the defendants continued to demand loudly that she identify herself and provide her address. (Complaint at 3-4.) However, she did not respond. (Complaint at 4.) At least two defendants also loudly demanded to know where she had been. (Complaint at 4.) McClanahan tried to answer, but she could not be heard because her face was in the dirt. (Complaint at 4.) The two defendants then released their grip enough for her to place her hands by her sides, and she informed them that she had been at the Café. (Complaint at 4.)

---

[1] The defendants involved in the September 19, 2006, incident were Stainker, Campbell and Hay.

McClanahan contends that one of the defendants then jumped on her with his knees, delivering a blow to her mid and lower back, causing another tremendous pain. (Complaint at 4.) She alleges that she was lying spread eagle on the ground and struggling for breath. (Complaint at 4.) McClanahan further alleges that another defendant grabbed her right arm, pulling it and twisting it up behind her until it was pointing straight up in the air, causing yet another tremendous pain. (Complaint at 4.) She contends that the defendants continued to loudly demand that she identify herself and provide her address. (Complaint at 4.) McClanahan states that she heard one defendant say to the other two "That's too much pressure." (Complaint at 4.) However, neither defendant released the pressure on her back or arm. (Complaint at 4.) She contends that she then identified herself repeatedly by her last name. (Complaint at 4.) The two defendants then allowed McClanahan to stand up, and one defendant held her hand loosely behind her back, while another continued to shine a spot light in her face. (Complaint at 4.) She alleges that she kept her eyes closed due to the bright light. (Complaint at 4.) Another defendant radioed McClanahan's name and again demanded loudly that she identify herself and her address. (Complaint at 4.) McClanahan refused to identify herself again. (Complaint at 4.) At that time, two of the defendants sprayed her in the face with pepper spray from a distance of less than two feet, and the third defendant released her. (Complaint at 4.) McClanahan states that she experienced tremendous pain, grabbed her face and fell to the ground. (Complaint at 4-5.) The defendants laughed at McClanahan and told her that she had been sprayed with pepper spray. (Complaint at 5.)

McClanahan alleges that one of the defendants lifted her to her knees and held her hands behind her back, loudly demanding that she identify herself and provide her address. (Complaint at 5.) She states that she was in so much pain at that time that

she told them that they "might as well shoot [her]." (Complaint at 5.) Thereafter, one of the defendants shot her in the left arm with a taser gun, which produced such pain that she lost consciousness. (Complaint at 5.) McClanahan alleges that when she regained consciousness, she was handcuffed with her hands behind her back and had been pushed against the front of the police car. (Complaint at 5.) She contends that one of the defendants was holding her head by her hair with such force, that it lifted her torso from the hood of the police car. (Complaint at 5.) Another defendant loudly demanded that she identify herself and provide her address, but McClanahan declined. (Complaint at 5.) The first defendant then slammed her head onto the hood of the police car, causing tremendous pain. (Complaint at 5.) At that time, McClanahan provided her address to the defendants. (Complaint at 5.) The defendants placed her in the police car, and she again lost consciousness. (Complaint at 5.)

McClanahan regained consciousness in a cell at Southwest Virginia Regional Jail Authority, in Abingdon, Virginia. (Complaint at 7.) She alleges that she was in shock and was in tremendous pain in her back and arms. (Complaint at 7.) She asked two male jailers for soap to wash the pepper spray from her eyes, but they declined. (Complaint at 7.) These jailers informed McClanahan that the defendants "had it all on tape" and that they had viewed the videotape. (Complaint at 7.) Thereafter, a female jailer allowed McClanahan to shower, and she informed this jailer that she was in tremendous pain. (Complaint at 7.) McClanahan was charged with two misdemeanors, namely public intoxication and obstruction of justice, and she was released on $1,000 bail. (Complaint at 7-8.)

McClanahan alleges that defendants Stainker and Campbell made false statements in their Incident Reports and Use of Force Reports. (Complaint at 5-6.)

Specifically, she states that Stainker stated in his Incident Report that she was "swaying and stumbling," that she had a "bruised cheek," that she "hit [him] in [his] jaw with her elbow," that she "continued to try to swing her arms and kick us with her heels," that he advised her "that if she did not stop she would be pepper sprayed," that she "shook free and began to run away," that she "began to swing her arms rapidly to try to strike us," that she "continued to wrestle with us" and that she "still refused to give us any personal information." (Complaint at 5-6.) Likewise, McClanahan states that Stainker falsely stated in his Use of Force Report that he had used force to "Protect Self" to "Effect Arrest." (Complaint at 6.) He further falsely stated that McClanahan's resistance level was a "III" on a scale of I to V and that she sustained no injuries. (Complaint at 6.) McClanahan alleges that Campbell falsely stated in his Incident Report that she was "unsteady on her feet," that she "had a bruise under her left eye and questioned its existence," that she "began to sway to the point of a near fall," that he "supported her by the shoulder," that she "pulled away" from defendant Stainker, that she tucked her arms underneath her and swung her body combatively, that Stainker threatened to pepper spray her if she did not stop resisting arrest, that McClanahan pulled away from their grip and ran away from them, that she "resisted our attempt to place her in hand cuffs," that he "press[ed] [his] thumb behind her ear" and that McClanahan "further resisted arrest when being placed in the patrol car by refusing to sit down." (Complaint at 6-7.) Likewise, McClanahan alleges that Campbell falsely stated in his Use of Force Report that he used force to "Protect Self" to "Effect Arrest," that her resistance level was "III" on a scale of I to IV and that she sustained no injuries. (Complaint at 7.)

Following this incident, McClanahan underwent physical therapy before eventually undergoing surgery to repair a torn rotator cuff. (Complaint at 8.) Despite

treatment, McClanahan alleges that she continued to suffer from tremendous back pain. (Complaint at 8.) Thereafter, she received nerve block injections and acupuncture treatments. (Complaint at 9.) McClanahan requested all records of her encounter with Stainker, Campbell and Hay from the Abingdon Police Department. (Complaint at 9.) However, she contends that because the defendants conspired to destroy or hide the videotape of the incident, no such tape was provided in response to her request. (Complaint at 9.)

*B. August 22, 2007, Arrest*

McClanahan states that she and her two children were at her mother's house at approximately 9:30 p.m. on August 22, 2007, when they heard loud noise from a party at a neighbor's house. (Complaint at 9.) When she went to the neighbor's house to complain about the noise, she was threatened by one of the attendees and was told to leave. (Complaint at 9.) McClanahan's mother insisted that she call 911 to report the incident. (Complaint at 9.) McClanahan's mother called 911 to make a noise complaint and to report the threat. (Complaint at 10.) She insisted that McClanahan stay with her until the police arrived. (Complaint at 10.) Defendant McPherson, a Deputy Sheriff for the Washington County, Virginia, Sheriff's Office, arrived at the neighbor's house at approximately 2:30 a.m. on August 23, 2007. (Complaint at 10.) Both McClanahan and her mother were waiting outside. (Complaint at 10.) McClanahan went to the edge of her mother's property and invited McPherson to walk up to her mother's house. (Complaint at 10.) He was invited to sit, but refused. (Complaint at 10.) When McClanahan asked McPherson to review a written statement about the threat, he refused. (Complaint at 10.) When McClanahan asked McPherson whether he knew who she was, he stated that he had "never seen her face."

-7-

Case 1:08-cv-00038-SGW-PMS   Document 39   Filed 02/17/09   Page 7 of 17   Pageid#: 98

(Complaint at 10.) She asked him if he was there to protect her, and he responded in a hostile manner. (Complaint at 10.) McClanahan stood up, put her hands in the air and began to back away. (Complaint at 10.) McClanahan informed the defendant that she was injured. (Complaint at 10.) McPherson stated that he intended to arrest McClanahan and that he was going to "show" her "what he could do." (Complaint at 10.) McPherson tackled McClanahan on a concrete patio. (Complaint at 10.) McClanahan's mother begged McPherson to let McClanahan go, and she informed him that McClanahan was injured. (Complaint at 10.) McPherson restrained McClanahan, ground his knuckles into her back and handcuffed her hands behind her back. (Complaint at 10.) She cried out in pain, and when she asked McPherson why she was being arrested, he responded that McClanahan smelled like a brewery. (Complaint at 10-11.) However, when McClanahan's mother smelled her breath, she stated that she did not smell anything. (Complaint at 11.) McPherson placed McClanahan in his patrol car and drove down the public roadway to meet another officer. (Complaint at 11.) When McPherson insisted she get out of the car to take a breathalyzer, she refused. (Complaint at 11.) McPherson then forced McClanahan out of the vehicle, administered the breathalyzer and then took her to jail. (Complaint at 11.)

McClanahan alleges that McPherson made several false statements in the Criminal Complaint, including that there was a "strong smell of alcohol coming from the breath of the accused," that after he advised her that she was under arrest, "she began to walk away" and that she "jerked away" when he placed a hand on her. (Complaint at 11.) She also claims that McPherson failed to report that he met with another law enforcement officer, and he falsely stated that McClanahan requested a breathalyzer, which showed a blood alcohol content of 0.079. (Complaint at 11.)

McClanahan further states that McPherson falsely stated in the Warrant for Arrest that McClanahan appeared in public in an intoxicated condition in violation of Virginia law. (Complaint at 11.)

McClanahan alleges that McPherson's actions aggravated her existing physical injuries. (Complaint at 11.) In April 2008, three MRIs revealed damage to discs in McClanahan's neck, thoracic area and lower back. (Complaint at 12.) She was prescribed steroids and physical therapy. (Complaint at 12.) McClanahan states that she continues to see her primary care physician for back pain. (Complaint at 12.) She claims that she is no longer able to perform physical labor and is unable to maintain any position without pain. (Complaint at 12.) She further alleges that as a direct result of her arrest by McPherson, her ex-husband petitioned the court to revoke her joint custody of their two minor children on grounds of her arrest for public drunkenness, and the court awarded temporary custody of these children to McClanahan's family and her ex-husband for more than one year, causing her severe mental anguish. (Complaint at 12.)

## II. Analysis

*A. Motion to Drop*

Pursuant to Federal Rule of Civil Procedure 20(a)(2):

> Persons ... may be joined in one action as defendants if ... any right to relief is asserted against them jointly, severally, or in the alternative with

> respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences ... *and* ... any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a)(2) (emphasis added). Thus, as defendants Stainker, Campbell and Hay argue in their brief, parties are misjoined if they fail to meet either of the preconditions for permissive joinder set forth in Rule 20(a)(2). Federal Rule of Civil Procedure 21 states as follows: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." FED. R. CIV. P. 21. Here, while it is true that common questions of law will arise in the claims against Stainker, Campbell and Hay and the claims against McPherson, there are no common factual issues. Also, the claims against McPherson and the claims against Stainker, Campbell and Hay clearly do not arise out of the same transaction, occurrence or series of transactions or occurrences. Specifically, the two incidents at issue in this case arose approximately one year apart, and none of the defendants were involved in both incidents. For these reasons, the undersigned recommends that the court grant the Motion to Drop, (Docket Item No. 11). The undersigned recommends that the court drop McPherson as a party-defendant in this action and dismiss the claims against him without prejudice.

*B. Motion to Dismiss*

A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In considering such a motion, the court should accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff. *See e.g., De Sole v. United States*, 947 F.2d 1169, 1171 (4th

-10-

Cir. 1991) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

For quite some time, this court has cited *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), for the proposition that in order to grant a motion to dismiss, it must appear certain that the plaintiff cannot prove any set of facts in support of her claim entitling her to relief. *See also Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). However, the Supreme Court recently revisited the proper standard of review for a motion to dismiss and stated that the "no set of facts" language from *Conley* has "earned its retirement" and "is best forgotten" because it is an "incomplete, negative gloss on an accepted pleading standard." *Bell Atl. Corp. v. Twombly*, 550 U.S. __, 127 S. Ct. 1955, 1969 (2007).

In *Twombly*, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" 127 S. Ct. at 1964-65 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965 (citations omitted). Additionally, the Court established a "plausibility standard" in which the pleadings must allege enough to make it clear that relief is not merely conceivable but plausible. *See Twombly*, 127 S. Ct. at 1965-69.

The defendants argue in their Motion to Dismiss that Count Two of

-11-

McClanahan's Complaint fails to state a claim for civil conspiracy under 42 U.S.C. § 1983 against defendants Stainker, Campbell and Hay upon which relief may be granted. Specifically, they argue that she cannot show a civil conspiracy to violate her First Amendment right to petition this court for redress. For the reasons that follow, I agree.

The Fourth Circuit in *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996) (citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992)), stated that in order to establish civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in plaintiff's deprivation of constitutional right. A couple of years later, the Fourth Circuit likewise held that for a person to be able to recover under 42 U.S.C. § 1983, she must prove that she has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States, and that the relevant conduct was committed by a person acting under the auspices of state authority. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). In the context of a motion to dismiss, the Fourth Circuit has stated as follows: "[t]o avoid evisceration of the purposes of qualified immunity, courts have [] required that plaintiffs alleging unlawful intent in conspiracy claims under ... § 1983 plead specific facts in a nonconclusory fashion to survive a motion to dismiss." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995) (quoting *Gooden v. Howard County, Md.*, 954 F.2d 960, 969-70 (4th Cir. 1992)). The proof of a conspiracy to violate the civil rights of another must meet a "weighty burden," but to withstand a motion to dismiss, the pleadings must meet only the basic standard

-12-

established in *Twombly*.[2]  *See Simmons ex. rel. Estate of Simmons v. Johnson*, 2005 WL 2671537, * 4 (W.D. Va. Oct. 20, 2005); *see also Hinkle*, 81 F.3d at 421.  When a complaint contains merely a vague allegation of conspiracy, it cannot withstand a motion to dismiss.  *See Gooden*, 954 F.2d at 969-70.

Here, the court finds it unnecessary to discuss the more complicated issues of whether McClanahan has alleged sufficient facts evidencing that the defendants acted jointly in concert or whether she alleged sufficient facts evidencing that some overt act was done in furtherance of the conspiracy because she cannot make the requisite showing, even for purposes of a motion to dismiss, that she was deprived of her First Amendment right to access to the courts.  In her Complaint, McClanahan alleges that the defendants attempted to deprive her of her First Amendment right to petition the court for redress for the wrongs they perpetrated against her by conspiring to falsify incident reports and use of force reports, as well as conspiring to destroy the videotape of the incident.  However, as the defendants argue in their brief, McClanahan was not deprived of any constitutional right because she did, in fact, file her Complaint with this court.  Unlike a criminal conspiracy, unless actual damages have resulted from something done by one or more of the conspirators in furtherance of the object of a conspiracy, no civil action lies against anyone.  *See Blackwelder v. Millman*, 522 F.2d 766, 775 (4th Cir. 1975).  Here, at most, McClanahan alleges that the defendants attempted to injure her.  However, the facts clearly show that no such injury occurred because she was able to petition the court for the redress that she seeks.  That being the case, the undersigned recommends that the court dismiss Count Two of

---

[2]The court in *Simmons* referred to the standard for granting a motion to dismiss as previously stated under *Conley*, 355 U.S. at 45-46.  However, as previously discussed, this issue was revisited in *Twombly*.

McClanahan's Complaint for failure to state a claim upon which relief may be granted.

Furthermore, due to the recommendation that the Motion to Drop be granted, the undersigned also recommends that the court dismiss without prejudice Counts Five, Six and Seven of the Complaint, as they allege no conduct by defendants Stainker, Campbell or Hay, but refer exclusively to McPherson.

*C. Punitive Damages*

Next, the defendants ask the court to cap the amount of punitive damages McClanahan seeks under Count Four, the assault and battery count against Stainker, Campbell and Hay, to the amount allowable under Virginia Code Annotated § 8.01-38.1. In her Complaint, McClanahan seeks punitive damages in the amount of $1.5 million for Count Four. McClanahan argues that state law does not limit the amount of punitive damages allowed under 42 U.S.C. § 1983. However, the defendants are not seeking to limit the amount of damages relating to the 42 U.S.C. § 1983 claims. The defendants seek to cap only the amount of punitive damages as to the pendent state law claim of assault and battery. McClanahan states no objection to such a cap in her brief in opposition to the Motion to Dismiss.

Pursuant to Virginia Code Annotated § 8.01-38.1:

> In any action accruing on or after July 1, 1988 ... the total amount awarded for punitive damages against all defendants found to be liable shall be determined by the trier of fact. In no event shall the total

-14-

amount awarded for punitive damages exceed $350,000. ...

VA. CODE ANN. § 8.01-38.1 (2007 Repl. Vol.). For all of these reasons, the undersigned recommends that the court cap the amount of punitive damages under Count Four to $350,000.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. The plaintiff was arrested by defendants Stainker, Campbell and Hay on September 19, 2006;
2. The plaintiff was arrested by defendant McPherson on August 22, 2007;
3. McPherson is misjoined because the claims against him and the claims against Stainker, Campbell and Hay did not arise out of the same transaction, occurrence or series of transactions or occurrences;
4. Thus, the Motion to Drop McPherson should be granted;
5. In order to establish a civil conspiracy under 42 U.S.C. § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in plaintiff's deprivation of a constitutional right;
6. The plaintiff cannot show, even for purposes of a motion to dismiss, the deprivation of her First Amendment rights to petition the courts for redress because she has, in fact, filed her Complaint in this court;
7. Thus, the plaintiff's Complaint fails to state a 42 U.S.C. § 1983 civil conspiracy

-15-

claim upon which relief may be granted;

8. Therefore, the defendants' Motion To Dismiss Count Two of the Complaint should be granted;

9. The defendants' Motion To Dismiss Counts Five, Six and Seven of the plaintiff's Complaint should be granted and those Counts should be dismissed without prejudice, as those Counts allege conduct against only McPherson, whom the undersigned has found to be misjoined;

10. Pursuant to Virginia Code Annotated § 8.01-38.1, punitive damages should be capped at $350,000; and

11. Thus, any punitive damages awarded pursuant to Count Four of the plaintiff's Complaint, the assault and battery claim, should be capped at $350,000.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court grant the Motion To Drop, (Docket Item No. 11). I also recommend that the court grant the Motion To Dismiss, (Docket Item No. 12). In particular, I recommend that the court dismiss Count Two of the plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a civil conspiracy claim under 42 U.S.C. § 1983. I further recommend that the court dismiss without prejudice Counts Five, Six and Seven, as they relate only to the dropped defendant, McPherson. Finally, I recommend that the court cap the amount of punitive damages on Count Four, the assault and battery claim, to $350,000, the amount allowable under Virginia law.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel and unrepresented parties of record.

ENTER: February 17, 2009.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE